# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| UNILOC USA, INC. and UNILOC LUXEMBOURG, S.A., | § § § | |
| *Plaintiffs*, | § § § | |
| v. | § § | CASE NO. 6:15-CV-1175-JRG |
| CISCO SYSTEMS, INC., | § § § | |
| *Defendant*. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Cisco Systems, Inc.'s ("Cisco") Motion to Transfer Venue to the Western District of Washington Based on a Forum Selection Clause. (Dkt. No. 28.) On February 21, 2017, the Court held a hearing at which the parties presented oral argument on said motion. After considering the briefing and the arguments of the parties, and for the following reasons, the Court finds that the motion should be and is **GRANTED**.

## I. BACKGROUND

In June of 2015, Uniloc (and others) entered into a settlement and license agreement with Microsoft Corporation ("the Microsoft Agreement") to resolve litigation concerning U.S. Patent Nos. 7,804,948 (the "'948 patent"); 7,853,000 (the "'000 patent"); and 8,571,194 (the "'194 patent"). (Dkt. No. 28 at 1.) As part of said agreement, Uniloc granted broad releases, licenses, and covenants not to sue Microsoft and Microsoft third party customers. (*See* Dkt. No. 28-6.) Under the terms of the agreement, such third party customers are intended to be third party beneficiaries of the agreement, and are "entitled to enforce the licenses and/or covenants not to sue without joinder of Microsoft as a party." (*Id.* at 4.) Uniloc also consented to exclusive venue in the

United States District Court for the Western District of Washington for any dispute arising as to the performance or breach of the agreement. (*Id.* at 8.)

In December of 2015, Plaintiffs Uniloc USA, Inc. and Uniloc Luxembourg, S.A. (collectively "Uniloc") filed suit against Cisco alleging infringement of the '948 patent, the '000 patent, and the '194 patent (the "patents-in-suit"). (Dkt. No. 1.) In its Complaint, Uniloc identified the "Cisco Jabber enterprise collaboration communications solution including Cisco Unified Presence Applications for Unified Communications Manager and Cisco Unified Communications Manager." *(Id.* at ¶¶ 11–17; *see also* ¶¶ 18–21, 28–31, 38–42.) Specifically, Uniloc accused Cisco's Jabber product, which was designed for use with Microsoft Windows, as infringing the patents-in-suit. (*Id.* at ¶¶ 11, 13, 15–16.) In its First Amended Answer, Cisco asserted the affirmative defense of license, as well as counterclaims for breach of contract and for declaratory judgment of license, claiming that it is included within the scope of the Microsoft Agreement as a third party beneficiary with respect to the Jabber products designed for use with Microsoft Windows. (*See* Dkt. No. 107.) In light of its license defense and counterclaims, Cisco argues that it is entitled to the benefit of the forum selection clause contained within the Microsoft Agreement. (*See* Dkt. No. 28.)

## II. LEGAL STANDARD

"[A] district court may transfer any civil action to any other district or division where it might have been brought" for the convenience of parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a). Typically, courts in within the Fifth Circuit conduct a two-step analysis in considering whether to transfer a case under § 1404(a). First, the district court determines "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (per curiam) (hereinafter

"*In re Volkswagen I*"). Next, the must district court must consider the convenience of the particular venues in hearing the case as viewed through the public and private interest factors provided by the Fifth Circuit in *Volkswagen*. *Id.*

This two-step process differs, however, when the movant has raised the applicability of a forum selection clause. As the Supreme Court of the United States has recognized, § 1404(a) also provides "a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 579 (2013). Accordingly, the threshold question when the movant asserts a forum selection clause in a motion to transfer is whether the clause implicated by the underlying claim or defense is applicable to the facts of the present case. *See General Protecht Group, Inc. v. Leviton Mfg. Co.*, 651 F.3d 1355, 1359 (Fed. Cir. 2011) (hereinafter "*GPG*") (citing *Tex. Instruments Inc. v. Tessera Inc.*, 231 F.3d 1325, 1328 (Fed. Cir. 2000)). If the court concludes that the forum selection clause is applicable, the usual § 1404 analysis is altered in two relevant ways: (1) the plaintiff's choice of forum merits no weight, and (2) the district court should consider arguments about public interest factors only. *Atl. Marine*, 651 U.S. at 581–82. "Because [the public interest factors] will rarely defeat a transfer motion, the practical result is that forum selection clauses should control except in unusual circumstances." *Id.* at 582. In other words, "[o]nly under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* at 581.

In patent cases, forum selection clauses commonly arise in motions to transfer venue when the defendant has raised a license defense. Thus, when making the threshold determination as to the applicability of the forum selection clause, the Federal Circuit has instructed that the nexus between the present case and the alleged license defense must be "non-frivolous." *GPG*, 651 F.3d at 1359. In other words, the bare allegation that a license provides a defense to the claims in suit

is insufficient to trigger the forum selection clause. *Id.* Beyond this guidance, however, the Federal Circuit has not strictly circumscribed the boundaries and scope of this "non-frivolous" standard. Previously, this Court has used the "one-quarter" standard when addressing forum selection clauses within the context of § 1404(a) motions and interpreting the "non-frivolous" standard. *Zix Corp. v. Echoworx Corp.*, No. 2:15-cv-1272-JRG, Dkt. No. 117 at 4–7 (E.D. Tex. June 9, 2016). In *Zix*, this Court examined the continuum existing between a wholly frivolous assertion of a license defense and a conclusive showing of success on the merits in an effort to find the "attachment point" where the asserted defense becomes "non-frivolous." *Id.* at 6. This Court concluded that the elusive attachment point is "almost assuredly . . . found before we reach the mid-point of the spectrum," and that it is probably "found nearer the one-quarter marker." *Id.*

### III.  ANALYSIS

The Court finds that Cisco has raised a "non-frivolous" license defense that entitles it to the benefit of the forum selection clause contained within the Microsoft Agreement. Additionally, the Court finds that consideration of the public interest factors fails to demonstrate "extraordinary circumstances" which would otherwise outweigh the forum selection clause.

**A.     The Suit Could Have Been Brought in the Western District of Washington**

Importantly, neither party disputes that venue is proper in the proposed transferee forum. Therefore, the Court finds that the threshold requirement for transfer under § 1404(a) is met.

**B.     The Forum Selection Clause in the Microsoft Agreement Has Been Properly Triggered**

The Court next considers whether Cisco has raised a "non-frivolous" license defense that entitles it to the benefit of the asserted forum selection clause. Notably, the Court's inquiry at this stage is merely to determine the viability of Cisco's license defense as a procedural matter. To this end, the scope of the Court's analysis is limited to the discreet issue of whether Cisco's defense

crosses the "one-quarter" mark of the viability spectrum. While an inquiry into whether a license defense is "non-frivolous" necessarily requires the Court to examine the merits of said defense, substantive resolution of Cisco's defense is neither appropriate nor necessary at this juncture.

Here, the Court finds that Cisco's license defense under the Microsoft Agreement is non-frivolous. Cisco's license defense centers on whether it is a third party beneficiary under the Microsoft Agreement with respect to the Jabber products designed for use with Microsoft Windows. The Microsoft Agreement was executed by Uniloc and Microsoft (and certain other parties) and applies to the patents-in-suit. It contains a third party beneficiary clause which provides "[e]ach entity or person that is *within the scope* of the *licenses* and *covenants not to sue* in this Agreement is intended to be, and is, a third-party beneficiary and is entitled to enforce the licenses and/or covenants not to sue without joinder of Microsoft as a party." (Dkt. No. 28-6 at 4) (emphasis added). Whether a party is "within the scope of the licenses and covenants not to sue in this Agreement" turns on the specific language of those two respective provisions contained within the Microsoft Agreement. According to its very terms, the "Licenses" section of the Microsoft Agreement applies to "any and all third parties (including, without limitation Microsoft's direct and indirect customers, suppliers, licensees, distributors, independent software vendors and end users)." (*Id.*) Further, the "Licenses" section provides,

> Should any Microsoft Product (in whole or in part) *or the use thereof* (in whole or in part) satisfy (in whole or in part) or provide a means for satisfying (in whole or in part) any element, step, portion or limitation of any claim of any Licensed Patent . . . that Microsoft Product and its use shall be deemed licensed under the Licensed Patents and for the purpose of so satisfying such element, step, portion or limitation.

(*Id.*) (emphasis added). The "Covenants Not to Sue" section of the Microsoft Agreement provides similar guarantees with similar language. (*Id.*) The Microsoft Agreement also provides a definition of "Microsoft Products." The "Definitions" section provides that

5

> "Microsoft Products" means and refers to any past, present, or future machine, apparatus, tool, kit, including porting or development kits, technology, software, product, equipment or service, including instruction on use, marketing materials, specifications and other documentation and information, that is directly or indirectly provided to, made or composed by, obtained from, licensed from, or provided by or for Microsoft.

(*Id.* at 1.)

In light of this broad language, Cisco argues that if the use of any Microsoft Product by a third party satisfies, even partially, any element of the patents-in-suit, then such use is "within the scope of the licenses and covenants not to sue." In turn, if the use by a third party is within the scope of the licenses and the covenants not to sue, then that party is a third party beneficiary of the Microsoft Agreement with respect to that use. Once a third party has established third party beneficiary status in this manner, Cisco argues, it is entitled to the benefit of the forum selection clause.

Uniloc has two primary arguments as to why Cisco's license defense is frivolous. First, Uniloc argues that the forum selection clause is limited to the "Parties" to the agreement and thus excludes any third party beneficiaries. (Dkt. No. 32 at 2.) Uniloc points to the introduction paragraph of the Microsoft Agreement, which indicates that the signatories to the agreement (Microsoft; Uniloc; Linqware, Inc. and Tod C. Turner) are collectively referred to throughout the Microsoft Agreement as "the Parties." (*Id.*) Given that the forum selection clause only refers to "the Parties," without reference to any third party beneficiaries, Uniloc contends that the forum selection clause is limited to the signatories to the Microsoft Agreement. Second, Uniloc argues that its claims of infringement are limited to Cisco's sale, production, use, etc. of its *own products* (as opposed to Microsoft Products), and that the Microsoft Agreement does not include Cisco products within its scope.[1]

---

[1] The Court pauses here to note that Uniloc failed to make this second argument in its response to Cisco's motion to

6

The Court is not persuaded that Uniloc's arguments render Cisco's license defense frivolous. Cisco has come forward with colorable, factually specific arguments as to why its use and sale of certain Jabber products falls within the third party beneficiary provision of the Microsoft Agreement. Accordingly, Cisco has provided more than a "bare allegation" that it is entitled to a license defense. *See GPG*, 651 F.3d at 1359. In response, Uniloc's arguments to the contrary fail to demonstrate conclusively that Cisco should not reap the benefit of the Microsoft Agreement. At this juncture, the briefing and the arguments provided in support of and in opposition to Cisco's motion to transfer demonstrate nothing more or less than the fact that there is a live dispute between the parties regarding Cisco's license defense. The resolution of this dispute, however, should not be made by this Court. If this Court were to proceed any further by adjudicating the merits of this dispute by resolving which party has the prevailing argument with respect to the ultimate license defense, then it would exceed its authority at this preliminary stage. Accordingly, the Court finds that Cisco has cleared the "one-quarter marker" and established a "non-frivolous" license defense. This license defense, in turn, triggers the applicability of the forum selection clause contained within the Microsoft Agreement.

C. **The Public Interest Factors Do Not Demonstrate "Extraordinary Circumstances" That Justify Departing from Uniloc's Bargained-For Forum Selection Clause**

Since the Court is persuaded that the forum selection clause in the Microsoft Agreement applies to this case, the next inquiry is whether the public interest factors from the traditional § 1404(a) analysis demonstrate "extraordinary circumstances" that justify departing from Uniloc's bargained-for forum selection clause. Here, the Court does not perceive any "extraordinary

---

transfer. (*See* Dkt. No. 32.) Rather, this argument was presented in Uniloc's sur-reply (Dkt. No. 34 at 2) and its response to a similar motion to transfer in a different case which has since been stayed. (*See* C.A. No. 6:15-cv-1169-JRG, Dkt. No. 30 at 4–5.) Uniloc also made this argument at the hearing on the present motion. Whether or not Uniloc waived this argument with respect to its present opposition to Cisco's motion to transfer, however, is immaterial given the Court's ultimate conclusion that neither of Uniloc's proffered arguments render Cisco's license defense frivolous.

7

circumstances."

### 1. The Administrative Difficulties Flowing From Court Congestion

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). The Federal Circuit has noted that this factor is mostly speculative, and thus has a relatively limited impact on ultimate decision whether to transfer. *Id.* Cisco argues that this factor favors transfer because the Western District of Washington is less congested than this District, with 141 pending cases per judge as compared to 263 cases per judge in this District. (Dkt. No. 28 at 9.) Uniloc argues that this factor does not favor transfer because the time to trial in patent cases is roughly equivalent in this District and the Western District of Washington. (Dkt. No. 32 at 11.) In light of the competing statistics, the Court finds this factor neutral.

### 2. The Local Interest in Having Localized Interests Decided at Home

The second public interest factor, the local interest in having localized interests decided at home, must be considered because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206. Cisco argues that this factor favors transfer for three reasons: (1) the inventor of the patents in suit resides in the Western District of Washington, (2) the only U.S.-based Cisco employee involved in Jabber development resides in Seattle, and (3) the Cisco employees who lead technical assistance for Jabber are also in Seattle. (Dkt. No. 28 at 9.) Uniloc argues that the factor weighs against transfer because it is a Texas corporation, its president and other employees work at its office in the Eastern District of Texas, and it maintains its relevant documents in this District. (Dkt. No. 32 at 12.) The Court finds that while both districts have some connection to the case, this factor weighs against transfer.

### 3. The Familiarity of the Forum With the Law That Will Govern the Case

Cisco argues that this factor favors transfer because the Microsoft Agreement provides that it "shall be construed and controlled by the internal laws of the State of Washington (excluding conflict of laws principles)." (Dkt. No. 28 at 10.) Uniloc counters by arguing that federal law applies to the scope of the forum selection clause in the Microsoft Agreement. (Dkt. No. 32 at 13.) While Uniloc's contention that federal law controls the interpretation of the forum selection clause is accurate, the ultimate success of Cisco's license defense (*i.e.*, the issue of whether it is a third party beneficiary) will likely be controlled by Washington state law, as stipulated in the Microsoft Agreement. As a result, this factor favors transfer.

### 4. The Avoidance of Unnecessary Problems of Conflict of Laws or in Application of Foreign Law

Neither party argues that there will be a conflict of laws problem or a problem with the application of foreign law to this case. Therefore, this factor is neutral.

### 5. On Balance, the Public Interest Factors Do Not Demonstrate "Extraordinary Circumstances"

Upon review of the public interest factors, the Court finds that two factors are neutral, one weighs against transfer, and one weighs in favor of transfer. Accordingly, Uniloc has failed to demonstrate that the public interest factors demonstrate "extraordinary circumstances" sufficient to outweigh the controlling forum selection clause.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Cisco has raised a "non-frivolous" license defense that triggers the applicability of the forum selection clause in the Microsoft Agreement. Given the Court's conclusion that no "extraordinary circumstances" exist which would justify departing from the forum selection clause, the Court finds that transfer is appropriate. Accordingly,

Cisco's Motion to Transfer Venue (Dkt. No. 28) is **GRANTED**. This case is **ORDERED** transferred to the United States District Court for the Western District of Washington. The clerk is directed to take all necessary steps to effectuate this transfer.

**So ORDERED and SIGNED this 13th day of March, 2017.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE